UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
                                                    :

ALGIE NORRIS, and SHALETTE SMITH,      :
on behalf of themselves and others similarly    :     **MEMORANDUM DECISION**
situated,                                      :     **AND ORDER**
                                                    :
                            Plaintiffs,     :     21-cv-7014 (BMC)
                                                    :
             - against -                :
                                                    :
PROCORE LLC, and JACK BROWN,        :
                                                    :
                          Defendants.     :
                                                    :
--------------------------------------------------------- X

**COGAN**, District Judge.

        Plaintiffs Algie Norris and Shalette Smith have sued ProCORE, and its alleged owner,

contending that they were not paid overtime, compensated for the full time they worked, nor

furnished with wage statements, all in violation of the Fair Labor Standards Act, 29 U.S.C. §

201, *et seq*., and the New York Labor Law, N.Y. Labor Law § 650, *et seq.*  Before me is

plaintiffs' motion for conditional approval to proceed with a collective action and for court-

facilitated notice under the FLSA.  See 29 U.S.C. § 216(b).  Because plaintiffs have met their

burden of showing that they are similarly situated to the non-managerial employees who worked

at the 95 Chester Street, Brooklyn, and 681 Clarkson Avenue, Brooklyn locations between

December 20, 2018, and December 20, 2021, the motion is granted as to those locations.

## BACKGROUND

        Norris and Smith are current and former security guards for a company that provides

security personnel for non-profit organizations and businesses throughout New York.  Norris

started her job on January 22, 2021 and continues to work for defendants.  During her

employment, Norris has worked at two locations: 95 Chester Street, Brooklyn, and 681 Clarkson

Avenue, Brooklyn.  ProCore also employed Smith at 95 Chester Street from June 18, 2018 until

October 30, 2021.  Although Smith was given the title of "supervisor" at some point during her

tenure, her job functions never changed and she was still paid on an hourly basis.

Plaintiffs claim that they, and fellow employees, were only paid for 40 hours of work a

week but were scheduled to work 8.5 hours a day, five days a week.  Plaintiffs believe the unpaid

extra half-hour a day, or two-and-a-half hours weekly, occurred because ProCORE denied them

an uninterrupted 30-minute lunch or rest break.  Plaintiffs conclude this was a companywide

policy based on their personal experience, observations of other employees adhering to the same

schedule, and conversations with colleagues.

Plaintiffs brought this action to recover lost wages and liquidated damages under the

FLSA and NYLL.  They also sought compensation for ProCORE's failure to properly furnish

wage statements and timely pay wages.  Plaintiffs moved to conditionally approve this case as an

FLSA collective action.  Defendants oppose the collective action motion on the grounds that

plaintiffs have failed to show they are similarly situated to other potential opt-in plaintiffs.  In the

alternative, defendants maintain that any collective must be limited to employees who worked

for ProCORE at the 95 Chester Street location and have claims arising within the FLSA's two-

year statute of limitations.  Finally, defendants believe plaintiffs form of notice is improper and

their request for information too broad.

## DISCUSSION

### I.     The Collective Action

The FLSA authorizes employees to bring a collective action to recover unpaid overtime

compensation on behalf of themselves and similarly situated employees.  See 29 U.S.C.

§ 216(b).  Because similarly situated employees can become plaintiffs only by filing written

consent with the court, see id., courts have discretion to facilitate notice to those employees, see

Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989).  Courts often refer to this process as "certification."  See, e.g., Weng v. Kung Fu Little Steamed Buns Ramen, Inc., No. 17-cv-273, 2018 WL 1737726, at *2 (S.D.N.Y. March 26, 2018).  I refer to it as approval to proceed with a collective action to avoid confusion with certification of class actions under Federal Rule of Civil Procedure 23.

Approval of a collective action consists of a two-step process.  See Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010).  At the first step, conditional approval, the court "mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether an FLSA violation has occurred."  Id. at 555 (quotation omitted).  At the second step, "the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs."  Id. (quotation omitted).

This case is at the first step.  It requires plaintiffs to make "a modest factual showing that [they] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law."  Id. (quotation omitted).  "The focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated."  Beaton v. Verizon New York, Inc., No. 20-cv-672, 2020 WL 5819902, at *2 (E.D.N.Y. Sept. 30, 2020) (alteration adopted) (quotation omitted).

To show that they are similarly situated, plaintiffs may use pleadings, affidavits, declarations, and other evidence to establish a "factual nexus" between their situation and that of the potential opt-in plaintiffs.  Fernandez v. On Time Ready Mix, Inc., No. 14-cv-4306, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quotation omitted).  Courts have repeatedly

emphasized the "minimal" nature of this burden because "the determination that the parties are similarly situated is merely a preliminary one that may be modified or reversed at the second certification stage." Rosa v. Dhillon, No. 20-cv-3672, 2020 WL 7343071, at *4 (E.D.N.Y. Dec. 14, 2020) (quoting Anjum v. J.C. Penney Co., No. 13-cv-460, 2015 WL 3603973, at *5 (E.D.N.Y. June 5, 2015)).  As a result, "courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." Hernandez v. Bare Burger Dio Inc., No. 12-cv-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013); see also Iriarte v. Redwood Deli and Catering, Inc., No. 07-cv-5062, 2008 WL 2622929, at *3 (E.D.N.Y. June 30, 2008); Hallissey v. Am. Online, Inc., No. 99-cv-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008).

Plaintiffs seek conditional approval of a collective consisting of all current and former employees of defendants who worked in New York State as non-exempt security guards, or similarly situated employees regardless of job title, from December 20, 2018 to December 20, 2021.  Plaintiffs rely on the complaint and their own declarations, which recall observations and conversations demonstrating that defendants alleged violative practices were a companywide policy.  Specifically, plaintiffs claim that their conversations with two ProCORE managers and at least eleven other named security guards support their claims.

Plaintiffs' declarations meet the minimal burden to establish a putative collective. "Several courts have accepted affidavits from two plaintiffs as sufficient to establish a 'common policy or practice of failing to pay overtime.'" Dhillon, 2020 WL 7343071, at *5 (quoting Elamrani v. Henry Limousine, Ltd., No. 15-cv-2050, 2016 WL 5477590, at *3 (E.D.N.Y. Sept. 28, 2016) (collecting cases)).  The declarations also adequately demonstrate the existence of a policy that extended beyond plaintiffs because the evidence shows their position is

"commoditized." Id. at 6.  In other words, an employer would likely treat security guard employees similarly because the job's responsibilities do not change by virtue of the employee fulfilling the role.  See id.; see also Siewmungal v. Nelson Mgmt. Grp. Ltd., No. 11-cv-5018, 2012 WL 715973, at *3 (E.D.N.Y. March 3, 2012).  For their part, defendants provide no reason why they would have paid the other security guards or similarly tasked employees differently.

Plaintiffs have also "go[ne] beyond their own circumstances," naming other security guards who were subject to this policy.  See Barrus v. Dick's Sporting Goods, Inc., 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006).  Norris's declaration states that she spoke with six other security guards who performed similar work and did not receive overtime compensation.  Next, Norris's declaration describes how she spoke with a manager named Sandra, last name unknown, who informed her that ProCORE had a policy of not allowing security guards to eat, sleep, or leave the premises during breaks.  Similarly, Smith states that she spoke with five named security guards and a manager who also confirmed defendants' policy.  This is enough to establish a factual nexus between plaintiffs and the other security guards.  See, e.g., Beaton, 2020 WL 5819902, at *4 (holding that a "technician escort" had shown a factual nexus between himself and the other escorts where his declaration identified the names and positions of three other workers "who all complained, in some form or another, that defendant failed to pay them for the full hours they worked").

Courts will deny conditional certification when threadbare, overly conclusory allegations of similarly situated employees are submitted.  See, Fernandez v. Sharp Management Corp., No. 16-cv-551, 2016 WL 5940918, *3 (S.D.N.Y. Oct. 13, 2016); Guo v. Tommy's Sushi Inc., No. 14-cv-3964, 2014 WL 5314822, *3 (S.D.N.Y. Oct. 16, 2014); Sanchez v. JMP Ventures, L.L.C., No. 13 Civ. 7264, 2014 WL 465542, *2 (S.D.N.Y. Jan. 27, 2014).  Both plaintiffs' declarations

come close to the type of testimony which prompted the courts just cited to deny certification. The declarations only give brief and vague examples of specific conversations, and do not state specific salaries received by any other employee.

However, the declarations name, or otherwise identify, at least eleven other employees and two managers.  Moreover, both plaintiffs have provided declarations attesting that the policy applied to the other employees.  Thus, each declaration corroborates the other.  See Garcia v. Spectrum of Creations, Inc., 102 F. Supp.3d 541, 548–49 (S.D.N.Y. 2015) ("Here, of course, there are two employees who corroborate each others' personal treatment and observations of the treatment of other employees.").  "While it would be helpful to have the time and dates of conversations," or the particular hours worked or salaries received by other employees, "it is not surprising that plaintiffs would be unable to recall those specifics." Id. at 549.  This indicates that plaintiffs and the other non-managerial employees at the ProCORE locations where plaintiffs worked were victims of a common policy or plan that violated the law.  I therefore grant conditional approval to proceed with a collective action but, as described below, narrow plaintiffs' proposed collective.

## II.    Scope of the Putative Collective

### A.    ProCORE Employees and Assignments

In their attempt to extend their collective action notice beyond the locations where they worked, plaintiffs point to their conversations with other employees and managers.  However, only one alleged conversation referenced other locations managed by ProCORE.  Specifically, Smith allegedly learned from a manager responsible for fifteen locations that preventing plaintiffs from taking a half-hour break was company policy.

Additionally, the language in Smith's declaration discussing this issue is almost identical to that used in Morris's declaration.  But Morris's declaration does not extend beyond the

6

locations where she worked.  Both declarations state: "I spoke with a manager . . . who told me it was ProCore policy to not allow security guards to eat, sleep, or leave the premises they are guarding during breaks.  [The manager] also told me that breaks at ProCore were in name only as security guards did not receive breaks."  The only meaningful differences between the two declarations are the names of the alleged managers and the fact that Smith's declaration notes that the manager she spoke with was responsible for fifteen locations.

When other courts have faced similar cookie-cutter allegations, they have declined to extend the collective beyond the plaintiff's workplace.  See Beaton v. Verizon New York, Inc., No. 20-cv-672, 2020 WL 5819902 (E.D.N.Y. Sept. 30, 2020) (repeating the statement that "[the employees] were also required to work off the clock" was insufficient to broaden notice); Dhillon, 2020 WL 7343071, at *6 (same).  There are two reasons why I adopt that approach here.

First, "a court has to be skeptical" when a plaintiff's declaration or affidavit "throws around terms that were plainly chosen by the plaintiff's lawyer."  Alberto v. Rico Pollo #2 Rest. Corp., No. 18-cv-4762, 2018 WL 6813057, at *3 (E.D.N.Y. Dec. 26, 2018).  Although a court does not make credibility determinations at this stage, Anjum, 2015 WL 3603973, at *7, it need not accept conclusory allegations, and "lawyer-composed" assertions are often conclusory because the plaintiffs do not – and cannot – explain how they came upon the information, see Alberto, 2018 WL 6813057, at *3.

Second, plaintiffs seek statewide certification "without clarifying how many locations exist."  See Mendoza v. Ashiya Sushi 5, Inc., No. 12-cv-8629, 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013).  Plaintiffs have claimed that ProCORE runs security for at least thirty locations, but only provide addresses for thirteen.  Moreover, apart from 95 Chester Street,

Brooklyn, and 681 Clarkson Avenue, Brooklyn, plaintiffs do not give specifics about the other locations managed by ProCORE.  Rather, for these other locations, plaintiffs only provide a vague recollection by Smith that in September 2020 she met a group of unnamed security guards who worked at multiple locations and said they were the victims of similar wage theft.

Indeed, all the pertinent testimony from Norris and Smith has focused on conversations that occurred at 95 Chester Street.  Given this limited experience, "if plaintiffs themselves don't know enough about [the operations managed by] defendants' [at the other locations], I [am] hard-pressed to find that they are all run the same." Dhillon, 2020 WL 7343071, at *7.

If defendants managed only a few locations, the actions of a single manager, or the comments of a few fellow employees, might have been enough.  See, e.g., Rotari v. Mitoushi Sushi, Inc., 448 F. Supp. 3d 246, 251–53 (E.D.N.Y. 2020) (four sushi restaurants).  But "[f]or large[ ] employers, the inference becomes more strained absent broader evidentiary support." Beaton, 2020 WL 5819902, at *3; see also Anjum, 2015 WL 3603973, at *1, 8–9 (forty-seven department stores).  "In the context of statewide certification under the FLSA, some courts have described this as a requirement to demonstrate that a 'statewide' policy or practice exists." Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing Vasquez v. Vitamin Shoppe Indus., Inc., No. 10-cv-8820, 2011 WL 2693712 at *3-4 (S.D.N.Y. July 11, 2011)). Plaintiffs' failure to provide additional detail obliges the Court to restrict plaintiffs' putative collective to security guards or similarly situated employees at the locations where plaintiffs actually worked – 95 Chester Street, Brooklyn, and 681 Clarkson Avenue, Brooklyn.

### B.    Statute of Limitations

The FLSA provides a two-year statute of limitations on actions to enforce its provisions, "except that a cause of action arising out of a willful violation may be commenced within three

years after the cause of action accrued." 29 U.S.C. § 255(a).  "[T]o prove a willful violation of

the FLSA within the meaning of § 255(a), it must be established that the employer either knew or

showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995) (internal quotation marks omitted); cf.

Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009) ("[M]ere negligence" or

unreasonableness on the employer's part is not sufficient to establish a willful violation.).

Plaintiffs must show more than the fact that defendants should have known they were violating

the law.  The reckless disregard standard requires actual knowledge of a legal requirement, and

deliberate disregard of the risk of violating it.  See Trans World Airlines v. Thurston, 469 U.S.

111, 126 (1985) (adopting a definition of "willful" in the FLSA as referring to conduct that

"show[s] a disregard for the governing statute" and is "marked by careless disregard [for]

whether or not one has the right so to act").

Defendants' concede that they were aware of the FLSA and claim they designed policies

to rigorously adhere to the law's requirements.  However, if plaintiffs' declarations are taken as

true, they state that defendants' actions violated this law.  If both defendants' concession that it

was aware of the law and plaintiffs' claim that defendants' policy violated it are true, defendants'

violation was, by definition, willful.  This means 29 U.S.C. § 255(a) extends the statute of

limitations to three years pending discovery.

## III.    Court-Facilitated Notice

### A.    Disclosure of Contact Information and the Notice

As explained above, I have limited the notice to employees who worked for ProCORE at

95 Chester Street, Brooklyn, and 681 Clarkson Avenue, Brooklyn, within three years of this

order.  To find those employees, plaintiffs want defendants to disclose "the names, titles,

compensation rates, last known mailing addresses, email addresses, all known telephone

numbers (including cell phone numbers), social security numbers, and dates of employment" for all security guards or similarly situated employees who worked for ProCORE in New York State within three years of the filing of the complaint.

After a court determines notice is appropriate, the defendants have a well-established obligation to provide the names and addresses of potential opt-in plaintiffs.  See Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).  It also follows that defendants are required to provide plaintiffs with the potential opt-in plaintiffs' dates of employment, as well as known email addresses and phone numbers for non-audio (i.e., text only) communication of the notice. See Velasquez v. Digital Page, Inc., No. 11-cv-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (citing Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 2014 WL 702185, at *6 (E.D.N.Y. 2014).  But in the interest of privacy, defendants need not provide the employees' compensation rates, social security numbers, and dates of birth.  See Gordon v. Kaleida Health, No. 08-cv-378S, 2009 WL 3334784, at *9 (W.D.N.Y. Oct. 14, 2009).

Plaintiffs also seek to send a reminder notice and consent form mid-way through the notice period.  "[T]he weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA."  Meo v. Lane Bryant, Inc., No. 18-cv-6360, 2019 WL 5157024, at *13 (E.D.N.Y. Sept. 30, 2019) (collecting cases).  Thus, plaintiffs may mail and email the reminder notice and consent forms to potential opt-in plaintiffs mid-way through the opt-in period.  See Dhillon, 2020 WL 7343071, at *8.

Defendants shall therefore disclose the relevant employees' names, titles, dates of employment, last known mailing addresses, email addresses, and phone numbers in a computer-readable format within twenty-one days of this order.  Plaintiffs may then disseminate the notice

to the employees identified above.  Because defendants have not objected to most of the content of the notice, I will adopt plaintiffs' proposed notice subject to the edits made by this Order.

**B.      Email and Text Message Notice**

Plaintiffs also request that the notice and reminder notice be disseminated via text message.  "Generally, courts allow such dissemination whe[n] 'the nature of the employer's business facilitate[s] a high turnover rate among employees.'"  Park v. FDM Grp. Inc., No. 16-cv-01520, 2019 WL 2205715, at *7 (S.D.N.Y. May 22, 2019); see Li Ni v. Red Tiger Dumpling House Inc., No. 19-3269, 2020 WL 7078533, at *11 (E.D.N.Y. Nov. 30, 2020).  In their briefing, plaintiffs observed that there have been high rates of relocation and turn over as a result of the pandemic.  Because at this stage all inferences are drawn in favor of plaintiffs, see Zhenkai Sun v. Sushi Fussion Express, Inc., No. 16-cv-4840, 2018 WL 2078477, at *4 (E.D.N.Y. Jan. 2, 2018), the Court recognizes that this once-in-a-century pandemic likely caused a high turnover rate given its massive economic impact, which likely effected both the defendant employer and plaintiff employees.  Thus, defendants will provide plaintiffs with the phone numbers and email addresses for potential opt-in collective members.  However, plaintiffs are prohibited from calling potential opt-in collective members unless the potential opt-in member responds to the notice first.  The phone number and email are for text notice only.

**C.      Posting of the Notice**

Plaintiffs also seek to require defendants to post the notice conspicuously.  In this Circuit, courts "routinely approve requests to post notice on employee bulletin boards and in other common areas, even when potential members will also be notified by mail, because it maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in."  Beaton, 2020 WL 5819902, at *6 (quotation omitted); see, e.g., Bittencourt v. Ferrara Bakery & Café, Inc., 310 F.R.D. 106 at 118 (S.D.N.Y. 2015) (posting notice in the

workplace is common, helps maximize potential plaintiffs' ability to be informed, and is not

unduly disruptive); Hamadou v. Hess Corp., 915 F. Supp. 2d 651 at 669 (S.D.N.Y. 2013)

("[c]ourts routinely approve requests to post notice [of conditional collective action approval] on

employee bulletin boards . . . even where potential [class] members will also be notified by

mail").  I therefore order defendants to post the notice and consent forms at a conspicuous

location at the 95 Chester Street, Brooklyn, and 681 Clarkson Avenue, Brooklyn, sites within

fourteen days of this order.

> **D.    Equitable Tolling**

Plaintiffs request tolling of the FLSA statute of limitations from the date this collective

action motion was filed until its resolution.  Plaintiffs argue that this tolling is necessary because

of the time it will take this Court to rule on the collective action motion and the delays caused by

the pandemic.

None of these contentions provide an adequate basis for equitable tolling.  As to their first

argument, plaintiffs will be happy to find that there was no substantial delay in the resolution of

this motion.  Cf. Chui v. Am. Yuexianggui of Li LLC, No. 18-cv-5091, 2020 WL 3618892, at

*10 (E.D.N.Y. July 2, 2020) (granting equitable tolling from the date plaintiff's motion seeking

conditional certification was filed, which took approximately one year for the court to decide).

Additionally, there is no evidence to suggest that the pandemic has delayed this case or will

delay notice.

"Equitable tolling is appropriate only in rare and exceptional circumstances, where a

plaintiff has been prevented in some extraordinary way from exercising his rights."  Hotaranu v.

Star Nissan Inc., No. 16-cv-5320, 2017 WL 1390808, at *7 (E.D.N.Y. Apr. 12, 2017) (quotations

omitted).  None of the circumstances plaintiff highlights – or any other circumstances in this case

– are "rare and exceptional."  This is a "regular run-of-the mill FLSA collective action" and,

therefore, "[t]here is no basis to toll the statute of limitations." Shibetti v. Z Rest., Diner & Lounge, Inc., 478 F. Supp. 3d 403, 416 n.8 (E.D.N.Y. 2020).

### E.   60-Day Period for Notice Circulation

"Courts in this Circuit routinely restrict the opt-in period to 60 days." Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014) (citations omitted); see also Fa Ting Wang v. Empire State Auto Corp., No. 14–cv–1491, 2015 WL 4603117, at *11-12 (E.D.N.Y. June 29, 2015) (recommending an opt-in period lasting the ""standard sixty days"); Hernandez v. Immortal Rise, Inc., 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012) (a 60-day period is "common practice under the FLSA").  I approve the 60-day opt-in period.

### F.   Defendants' Contact Information

Defendants request that the notice include their counsel's contact information so that potential opt-in plaintiffs can contact them to get more information.  Inclusion of a defendant's identity and contact information is common in this District.  See, e.g., Guan v. Long Island Bus. Inst., Inc., No. 15-CV-2215, 2016, WL 4257549 at *6 (E.D.N.Y Aug. 11, 2016) (authorizing inclusion of defendants' contact information in the notice of an FLSA conditional certification); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (defendant's request "to include defense counsel's contact information" was reasonable if it included a separate heading entitled "attorneys for defendants").  Accordingly, the Court Orders that contact information for defendant's counsel be included in a separate portion of the Notice.

### G.   Defendants' View of the Case

Defendants seek to include language in the Notice expressing their view of the lawsuit. The language consists of two additions and reads as follows: (1) "[d]efendants deny that they owe the plaintiffs any additional compensation.  Defendants assert that plaintiffs were paid for all hours worked, [of which] [d]efendants were aware," and (2) "[d]efendant Jack Brown denies

that he is an employer under the FLSA."  Defendants also request the addition of language to the notice clearly stating that the Court presently has no opinion on the merits of plaintiffs' case.

Plaintiffs propose the alternative statement "defendants deny any and all wrongdoing in this case and that you are owed any additional compensation;" and note that the proposed notice already states that "the Court has taken no position regarding the merits of the claims."

Courts routinely hold that collective action notices should include a summary describing the employers' position.  See, e.g., Viriri v. White Plains Hosp. Med. Ctr., 320 F.R.D. 344, 356 (S.D.N.Y. June 8, 2017) (potential opt-in plaintiffs should be advised that the defendant employer had asserted compliance with the FLSA); Martin v. Sprint/United Mgmt. Co., No. 15-cv-5237, 2016 WL 30334, at *17 (S.D.N.Y. Jan. 4, 2016) (ordering plaintiffs to add "a more fulsome statement of defendants' positions and defense" to the notice of pendency).  Likewise, courts have found that "language regarding the absence of any adjudication on the merits is appropriate[ly included in a notice of pendency.]"  Viriri, 320 F.R.D. at 356.  Thus, some statement describing defendants' position and the lack of adjudication on the merits is appropriate.  Defendants' proposed statement concerning their denial of liability adequately states their position without much risk of chilling potential opt-in plaintiffs, and defendants' statement concerning the Court's lack of position is sufficient for purposes of this notice.

### H.     Notice of Trial-Related Obligations and The Risk of Paying Defendant's Expenses

Defendants also ask that the collective action notice include language concerning the consequences of joining the collective.  Defendants want the notice to state that putative class members may be subject to "risks" including participation in discovery and the payment of litigation costs to defendants if defendants prevail.

Courts in this circuit are split on whether FLSA notices should include information about potential costs and trial obligations to members of the collective.  Compare Ansoralli v. CVS Pharmacy, Inc., No. 16-cv-1506, 2017 WL 570767, at *4 (E.D.N.Y. Feb. 13, 2017) ("There shall be no reference in the notice to opt-ins' discovery and trial obligations or their responsibility to pay costs or fees if they do not prevail.") with Bah v. Shoe Mania, Inc., No. 08-cv-9380, 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009) (requiring modification of the notice form to indicate that potential plaintiffs may be responsible for costs and trial obligations).

I agree "with those cases holding that language about potential costs [and trial obligations] should not be included in notice to the putative members of the collective."  Kucher v. Domino's Pizza, Inc., No. 16-cv-2492, 2017 WL 2987216, at *3-4 (S.D.N.Y. May 22, 2017). It is unclear at this stage what obligations an opt-in plaintiff may actually have in this case, if any.  The purpose of the notice is to inform employees of their ability to opt-in, not to scare them out of exercising it.  If certain opt-in plaintiffs conclude they do not want the responsibility that goes along with being in the collective, they can always withdraw.

## I.     Translations of the Notice

Plaintiffs' request that they be allowed to translate the notice into Spanish, or any language sought by a potential collective participant, is granted.  Courts generally "permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 76 (E.D.N.Y. 2016).  Defendants do not oppose this request, but only seek to be provided with the Spanish (or other foreign language) translation three days in advance.  This position is reasonable.  Thus, plaintiffs may translate the notice upon request and defendants' request for a three-day preview is granted.

## CONCLUSION

Plaintiffs' motion for leave to send out notice of a collective action is granted to the extent set forth above.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       April 21, 2022

16